PEOPLE v FAVORS

Docket No. 61293. Submitted January 21, 1982, at Detroit.—Decided November 3, 1982.

Gene T. Favors was convicted by a jury in Recorder's Court of Detroit of assault with intent to commit criminal sexual conduct involving penetration and was sentenced, Craig S. Strong, J. The Court of Appeals granted the people's motion to affirm. The Supreme Court, in lieu of granting defendant leave to appeal, vacated the order of the Court of Appeals and remanded the case to the Court of Appeals for plenary consideration, 412 Mich 876 (1981). On remand, *held:*

1. The trial court did not err in allowing the prosecutor to impeach the complainant by reference to a prior inconsistent statement

2. The trial court erred in permitting the prosecutor to place before the jury the substance of a prior statement made by the complainant to a police officer in which complainant described the defendant's apartment, where the assault allegedly took place. The error was harmless beyond a reasonable doubt, however, because the evidence against defendant was overwhelming. There was no reversible error as to this issue.

3. The trial court did not err in refusing to give requested instructions as to criminal sexual conduct in the third and fourth degrees. The requested instructions were not supported by any evidence.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses §§ 520, 560.
[2] 29 Am Jur 2d, Evidence §§ 876, 877.
　81 Am Jur 2d, Witnesses § 438 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error §§ 778, 798.
[4-6] 65 Am Jur 2d, Rape §§ 15, 17, 23.
[7] 65 Am Jur 2d, Rape §§ 8, 9.
　Rape, or similar offense based on intercourse with woman who is allegedly mental deficient. 31 ALR3d 1227.
[8] 65 Am Jur 2d, Rape § 110.
　75 Am Jur 2d, Trial § 876 *et seq.*

1. RAPE — RES GESTAE WITNESSES — IMPEACHMENT OF COMPLAINANT.

    The complainant in a prosecution for criminal sexual conduct is clearly a res gestae witness who may be impeached by the prosecution (MCL 767.40[a]; MSA 28.980[1]).

2. EVIDENCE — WITNESSES — REFRESHING RECOLLECTION — RULES OF EVIDENCE.

    The material used to refresh a witness's memory or recollection is not substantive evidence whereas the recollection itself is substantive evidence; for this reason it is not necessary and is often highly prejudicial to permit the jury to hear the substance of a statement to be employed to refresh the witness's memory or recollection; the substance of the statement used to refresh is admissible into evidence only at the insistence of the adverse party (MRE 612).

3. CRIMINAL LAW — HARMLESS ERROR.

    An error in a criminal trial does not require reversal of the defendant's conviction if it can be said that the error was harmless beyond a reasonable doubt; in determining whether the error is harmless, the reviewing court must determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction, *i.e.,* whether it might have aided in convincing an otherwise undecided juror of the defendant's guilt beyond a reasonable doubt; if it is reasonably possible that, in a trial free of the error complained of, even one such jury member might have voted to acquit the defendant, then the error was not harmless, and the defendant must be retried; if, on the other hand, the proof was so overwhelming, aside from the taint of the error, that all reasonable jurors would find guilt beyond a reasonable doubt, then the conviction must stand.

4. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT.

    A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if that other person is under 13 years of age (MCL 750.520b; MSA 28.788[2]).

5. RAPE — SECOND-DEGREE CRIMINAL SEXUAL CONDUCT.

    A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if that other person is under 13 years of age (MCL 750.520c; MSA 28.788[3]).

6. RAPE — THIRD-DEGREE CRIMINAL SEXUAL CONDUCT.

A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and that other person is at least 13 years of age and under 16 years of age (MCL 750.520d; MSA 28.788[4]).

7. RAPE — FOURTH-DEGREE CRIMINAL SEXUAL CONDUCT.

A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person by force or coercion or in situations where he or she has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless (MCL 750.520e; MSA 28.788[5]).

8. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES.

A trial court has a duty to instruct on requested necessarily included lesser offenses and requested cognate lesser included offenses where they are of the same class or category or closely related to the specifically charged offense where there is evidence to support the requested instructions; where there is no evidence to support the instructions, the court properly may decline to give them.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Janice M. Joyce,* Assistant Prosecuting Attorney, for the people.

*Bolden & Blake, P.C.* (by *Carl B. Bolden, Jr.),* for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and V. J. BRENNAN and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. Defendant Gene Tunnie Favors was charged with first-degree criminal sexual conduct and convicted by jury of assault with intent to commit criminal sexual conduct involving penetration, MCL 750.520g(1); MSA 28.788(7)(1). He was sentenced to a term of six

---

* Circuit judge, sitting on the Court of Appeals by assignment.

years, eight months to ten years in prison and appeals as of right.

The complainant, Lasonia Bey, was nine years old at the time of the offense. On the morning of May 11, 1979, she was walking to school alone on Tuxedo Street in Detroit. A man whom she later identified as defendant came up to her and asked her directions. After she told him what he wanted to know, he said, "Come on, I have a gun." He took her across the street to the back door of an apartment building on Tuxedo Street and told her to wait there. He said if she were to run, he would catch her. He then went around to the front door. When he came back, he led her down a hallway and told her to shut her eyes as they went up some stairs. He then took her into his apartment. Defendant told Lasonia to take off all of her clothes, and she complied. He then took off his clothes and told her to get into bed, which she did. Although the testimony at trial was conflicting, Lasonia on more than one occasion testified that the defendant engaged in an act of sexual penetration with her. Thereafter, the defendant handed Lasonia a pair of headphones and offered to give them to her if she would keep quiet about what had happened. She testified he then told her to come back the next day and offered her $20 if she would do so. He then sent her out the back door of the apartment, and she went home and told her father and her aunt what had happened. They, in turn, called the police.

The investigation conducted by the police included the use of a tracking dog which led its handler without hesitation to the defendant's apartment; a lineup, at which the complainant identified the defendant; scientific testing of a hair sample removed from the complainant's vagina

and blood and semen stains from sheets at the defendant's apartment, all of which were inconclusive; and medical testimony regarding an examination which revealed "normal female, hymen intact; no bleeding, no lacerations, no discharge, no bruises" and no swelling.

There was additional testimony that at the time she entered the apartment, Lasonia Bey had with her an arithmetic assignment paper. She testified that she had put that in her sock prior to being instructed to disrobe by the defendant. A police officer testified that the arithmetic paper was found inside the defendant's apartment at the time of his arrest.

The defendant testified in his own behalf. He denied having had sexual intercourse with Lasonia Bey and claimed that he had never seen her before. He said that he was jogging from about six to seven a.m. until about nine a.m. on May 11, 1979, that he returned home and went to sleep, and that he later heard knocking on the door and the police came in to arrest him. On cross-examination, he could not explain how the complainant was able to describe the details of his apartment, denied ever having seen the arithmetic paper taken from his apartment and stated that he did not know how it got there.

The court instructed the jury as to first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), second-degree criminal sexual conduct, MCL 750.520c; MSA 28.788(3), assault with intent to commit criminal sexual conduct involving penetration, MCL 750.520g(1); MSA 28.788(7)(1), and assault with intent to commit second-degree criminal sexual conduct, MCL 750.520g(2); MSA 28.788(7)(2). The trial court declined to give defen-

dant's requested jury instructions on the offenses of criminal sexual conduct in the third and fourth degrees. After a little over an hour of deliberation, the jury returned with a note "requesting that (the judge) explain the difference between criminal sexual conduct in the first degree and assault with intent to commit first or second degree". The court gave the requested instruction. The jury returned a verdict of not guilty of criminal sexual conduct in the first degree but found defendant "guilty of assault with intent to commit criminal sexual conduct involving penetration".

On appeal to this Court, the people's motion to affirm was granted on April 28, 1981. On December 1, 1981, the Supreme Court remanded the case to this Court for plenary consideration.

Three issues are raised by defendant on appeal. They will be considered separately.

Defendant first contends that the trial court erred reversibly in permitting the prosecutor to impeach Lasonia Bey's testimony regarding penetation.

Concerning penetration, the complainant, on direct examination by the prosecutor, testified as follows regarding the events that occurred after she was instructed by the defendant to get into the bed:

"*Q.* And did you get into the bed?
"*A.* Yes.
"*Q.* And then what happened?
"*A.* And then he put his penis in my vagina.
"*Q.* Who put his penis in your vagina?
"*A.* He did.
"*Q.* Mr. Favors?
"*A.* Yes."

Immediately afterwards, Lasonia contradicted her testimony that defendant had penetrated her:

"*Q.* Now, did his penis actually go into your vagina?
"*A. No.*
"*Q. Can you tell me where it went?*
"*A.* It was just—it almost went in.
"*Q.* It didn't go inside?
"*A.* No.
"*Q.* Did it ever go inside you while you were there?
"*A.* No."

Upon receiving the contradictory testimony, the prosecutor referred the witness to an earlier, out-of-court statement she had made to a policewoman, Mrs. Washington:

"*Q.* Now, do you remember talking to a policewoman?
"*A.* Yes.
"*Q.* By the name of Mrs. Washington?
"*A.* Yes.
"*Q.* And do you remember talking to her on May 11, 1979?
"*A.* Yes.
"*Q.* The same date this happened?
"*A.* Yes.
"*Q.* And when did you talk to her, in the morning, evening, afternoon?
"*A.* It was in the morning.
"*Q.* And did you tell her what happened to you?
"*A.* Yes.
"*Q.* And do you know how to read?
"*A.* Yes.
*Mr. Moray:* Excuse me. I have a matter of law I would like to take up with the court, please."

The jury was excused and defense counsel ably and precisely objected to the presumed reference to the complainant's prior statement on the sole

basis that it would constitute improper impeachment. According to the defendant's attorney, the witness was not an ordinary res gestae witness whose impeachment was proper under MRE 607(2) and MCL 767.40(a); MSA 28.980(1). Defense counsel also argued that there are no cases holding that a prosecutor may impeach the complaining witness. The trial court overruled defendant's objection, finding the impeachment to be proper under both MRE 607(2)(A) and 607(2)(C):

"*The Court:* All right. Now, as I view the rules of evidence, I don't see anything that supports defense counsel's position. And if we focus in on Rule 607, I think it is clear when it says that the credibility of a witness may be attacked by the calling party if the calling party is the prosecutor, and in this case the calling party is in fact the prosecutor. And further it says, 'is obliged to call the witnesses.' And the prosecutor is obliged to call the complainant.

"Now, if we go down that rule to subsection (c),there is another provision which states that if the witness' testimony was contrary to that which the calling party had anticipated and is actually injurious to the calling party's case, it can be impeached.

"Now, I am going to ask the prosecutor was the testimony contrary to what you anticipated prior to trial?

"*Mr. Resnick:* One hundred percent contrary.

"*The Court:* There is no question it was injurious, so consequently I am going to deny your motion.

\* \* \*

"* * * I think that even based upon the information and the opening statement of counsel in this matter, it can be assumed the the prosecutor did anticipate the complainant would say that there was sexual penetration. Just by what has already been said, the testimony by the witness has not been clear on that. It is conflicting testimony by the complainant, so I find this would fall within the Rule of Evidence 607. Once again, I am denying the motion."

Upon being confronted with her prior statement to the policewoman, Lasonia Bey testified that there had been "a little bit" of penetration.

MRE 607 provides:

"The credibility of a witness may be attacked by

"(1) an opposing party; or

"(2) the calling party if

"(A) the calling party is the prosecutor and he is obliged to call the witness,

"(B) in a civil case, the witness is an opposite party or employee or agent of an opposite party, or

"(C) the witness's testimony was contrary to that which the calling party had anticipated and was actually injurious to the calling party's case."

We are satisfied that a complainant in a prosecution for criminal sexual conduct is a witness the prosecutor is "obliged to call" for purposes of MRE 607(2)(A). Although one can envision situations where guilt could be established without the testimony of the complainant, it is clear that, where the complainant is available to testify, the prosecutor is obliged to call him or her.

Similarly, the complainant in a prosecution for criminal sexual conduct is clearly a res gestae witness who may be impeached by the prosecution under MCL 767.40(a); MSA 28.980(1).

Further, impeachment in this case was proper under MRE 607(2)(c) in that the witness's testimony was contrary to what the prosecutor had anticipated *and* was actually injurious to the people's case.

The complainant testified at the preliminary examination that there was penetration; evidence was admitted that the complainant told a police officer that the defendant "got on top of me and put his penis in my vagina"; the complainant first

testified at trial that there was penetration. There can be no doubt that the prosecutor's statement to the court that he was surprised by the testimony is fully supported by the record and there can be no question that the complainant's contradictory testimony was injurious to the prosecutor's case. Impeachment under MRE 607(2)(C) was proper.

It is noteworthy that defendant did not state any other grounds for his objection to the impeachment of the complainant's testimony regarding penetration. As a result, even if the impeachment were improper in some other respect, this Court may not find reversible error. Under MRE 103, "[e]rror may not be predicated upon a ruling which admits * * * evidence unless * * * a timely objection or motion to strike appears as of record, stating the specific ground of objection, if the specific ground was not apparent from the context * * *". MRE 103(a)(1).

With regard to this asserted error it should also be noted that the jury acquitted the defendant of the criminal sexual conduct charge involving penetration. The likelihood of any prejudice from the testimony in dispute is therefore substantially reduced.

The trial court did not err in allowing the prosecutor to impeach the complainant by reference to her prior inconsistent statement.

It is argued next that the trial court erred in allowing the prosecutor to read aloud the complainant's prior description of the defendant's apartment. During direct examination of the complainant, the prosecutor asked her if she had talked to a policewoman about things she saw inside the defendant's apartment. Having answered that she did, the complainant was asked to read from her statement to the policewoman. De-

fense counsel objected on the basis that the prosecutor had not "asked any questions about the interior of that apartment to show that her memory needs to be refreshed". The prosecutor responded that the witness had earlier testified that all she remembered was a hard leather couch and an empty fish tank. The court overruled defense counsel's objection and the prosecutor proceeded to ask about the complainant's prior description of the apartment to the policewoman as follows:

"*Q. (By Mr. Resnick):* Did you read that question and Answer?

"*A.* Um-hum.

"*Q.* Were there any words that you didn't understand?

"*A.* No.

"*Q.* Okay. Now, you remember when I asked you yesterday about describing the apartment, you said a black leather couch, right?

"*A.* Yes.

"*Q.* And you said something about an empty fish tank?

"*A.* Yes.

"*Q.* Is there anything else you remember after you read this statement?

"*A.* No.

"*Q.* Do you remember the question by Mrs. Washington on page three, 'What type of apartment was it?'

"And your answer, 'Black leather hard couch, empty fish tank with water in it but no fish, soft mattress with possibly dark green sheets, kitchen was messy and brown end table with little lamp. Behind the apartment building, there were a lot of old junky cars.' * * *

"*A.* No.

"*Q.* When you gave that answer to the policewoman, everything I just said, was that in the apartment that you remember?

"*A.* Yes."

On appeal defendant correctly argues that this method of refreshing the witness's recollection was improper. Where the memory of a witness is to be refreshed, it is not necessary and is often highly prejudicial to permit the jury to hear the substance of the statement to be employed. Where memory or recollection is being refreshed, the material used for that purpose is not substantive evidence. Rather, the material is employed to simply trigger the witness's recollection of the events. That recollection is substantive evidence and the material used to refresh is not. See *People v Thomas,* 359 Mich 251, 263; 102 NW2d 475 (1960). The substance of the statement used to refresh is admissible only at the instance of the adverse party. MRE 612. Accordingly, we are of the view that the trial court erred in permitting the prosecutor to place before the jury the substance of the witness's prior statement to the police officer.

However, we are also of the view that this error was harmless beyond a reasonable doubt. The evidence against the defendant was overwhelming. The complainant was able to describe certain features of the defendant's apartment; namely, a black leather couch and empty fish tank. Her ability to accurately describe other features of the apartment was established independently by officers who testified that she referred to a soft mattress with green sheets, an end table with a lamp, and other features both inside and outside the apartment. That Lasonia could describe any features of the defendant's apartment was crucial because it revealed that the defendant, contrary to his flat denial that he even knew her, had caused her to enter his apartment. The discovery of her arithmetic assignment paper in the defendant's apartment, together with the testimony of her

aunt and the tracking dog evidence, was nearly conclusive on the question of whether the complainant had in fact been in the defendant's apartment. Accordingly, the statement to the policewoman describing a few additional features of the apartment was not crucial in the jury's determination of defendant's guilt.

In *People v Swan,* 56 Mich App 22, 33; 223 NW2d 346 (1974), this Court set forth the standard for determining harmless error as follows:

"In order to hold that the error in this case does not require reversal, however, we must also be able to say that it was 'harmless beyond a reasonable doubt'. * * * We must determine 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction', that is, whether it might have aided in convincing an otherwise undecided juror of the defendant's guilt beyond a reasonable doubt. If it is reasonably possible that, in a trial free of the error complained of, even one such jury member might have voted to acquit the defendant, then the error was not harmless, and the defendant must be retried. If, on the other hand, 'the proof was so overwhelming, aside from the taint of the error, that all reasonable jurors would find guilt beyond a reasonable doubt', then the conviction must stand." (Footnotes omitted.)

This Court believes that the proof of defendant's guilt of the charge of assault with intent to commit criminal sexual conduct, MCL 750.520g; MSA 28.788(7), was so overwhelming, aside from any error in the reading of the complainant's prior description of the apartment, that all reasonable jurors still would have found guilt beyond a reasonable doubt. *People v Swan, supra.* Accordingly, there is no reversible error as to this issue.

Third, the defendant contends that the trial

court erred in refusing to give requested instructions as to criminal sexual conduct in the third and fourth degrees.

The criminal sexual conduct statute, MCL 750.520a *et seq.;* MSA 28.788(1) *et seq.,* sets forth four degrees of the offense.

As pertinent to this case, a person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if that other person is under 13 years of age. MCL 750.520b; MSA 28.788(2).

A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if that other person is under 13 years of age. MCL 750.520c; MSA 28.788(3).

A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and that other person is at least 13 years of age and under 16 years of age. MCL 750.520d; MSA 28.788(4).

Finally, a person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person by force or coercion or in situations where he or she has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless. MCL 750.520e; MSA 28.788(5).

Defendant here contends that the trial court should have allowed the jury an opportunity to determine that the complainant was in fact 13 or more years of age and, therefore, to find defendant guilty of only third- or fourth-degree criminal sexual conduct.

Although the trial court has a duty to instruct on requested necessarily included lesser offenses and requested cognate lesser included offenses

where they are of the same class or category or closely related to the specifically charged offense, *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), the court's duty to so instruct depends upon there being evidence to support the requested instructions. The trial court here had a duty to consider whether evidence adduced at trial would have supported a guilty verdict on the lesser offenses of third- or fourth-degree criminal sexual conduct. *People v Chamblis,* 395 Mich 408, 423; 236 NW2d 473 (1975). The trial court properly found in this case that the evidence would not support convictions on those charges. There was no evidence introduced at the time of trial to the effect that the defendant was other than nine years old, there was no significant question regarding her age at the time of cross-examination of her by defense counsel, and there was no factual dispute by anyone in the courtroom that she was other than nine years old. In these circumstances, to require the court to instruct the jury as to offenses which necessitate a finding that the complainant was other than nine years old flies in the face of reason. Because the requested instructions were not supported by any evidence, the trial court properly declined to give them.

We have considered all of the issues raised by the defendant and find none to merit reversal of his conviction. That conviction is affirmed.