*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 14, 2019

Plaintiff-Appellee,

v

No. 340111
Oakland Circuit Court
LC No. 2017-262837-FH

BRENT ALAN OWINGS,

Defendant-Appellant.

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

A jury convicted defendant of first-degree home invasion, MCL 750.110a(2), and assault by strangulation, MCL 750.84(1)(b). The trial court sentenced defendant to 10 to 20 years' imprisonment for the home invasion conviction and 6 to 10 years' imprisonment for the assault conviction, to be served consecutively. Defendant appeals as of right, and we affirm.

## I. OVERVIEW OF THE FACTS

The jury convicted defendant of breaking into the mobile home of Alexandra Wilhelme and strangling her during the early morning hours of April 2, 2017. Defendant and Wilhelme were former romantic partners and they had a daughter together. They continued to see each other, but at the time of the assault they were no longer involved in a romantic relationship. Although defendant had been trying to get back together with Wilhelme, she had repeatedly rejected his attempts.

Wilhelme lived in a mobile home with her three children, her mother Windy Marion, and a younger sister. On the evening of April 1, 2017, Wilhelme's brother, Gregory Marion, and his girlfriend, Jessica Papuga, also stayed at the mobile home. Wilhelme attended a bonfire gathering that evening. During the evening, she communicated with defendant by text message and contemplated meeting with defendant later that night. However, Wilhelme denied that she invited defendant to her home, and denied that she gave defendant permission to enter the home. After Wilhelme returned home that night, she received a telephone call from defendant, who wanted to come over to talk about their relationship and possibly getting back together.

According to Wilhelme, she told him that she was going to bed and was not in a state of mind to discuss their relationship at that time.

After Wilhelme was in bed, she saw defendant inside her home, crouched down behind a fish tank near Wilhelme's bedroom door. Defendant then emerged and told Wilhelme that he was there to talk about their relationship. Wilhelm did not immediately ask defendant to leave, but after they began to argue, she told defendant to leave and that their relationship was over. According to Wilhelme, defendant got on top of her and placed his hand on her throat and began to strangle her, to the point that she was unable to scream or talk. She eventually was able to roll over, get away from defendant, and scream. At that point, defendant left. Wilhelme ran into the living room, woke up her brother, and repeatedly told him, "He's gonna kill me." Wilhelme's screaming also woke up Windy and Papuga. Gregory called the police. Gregory and the police later discovered footprints in the wet or frozen grass that led from a nearby clubhouse up the back steps to the home's rear entrance, which was rarely used.

Photographs of Wilhelme after the incident showed that she had red marks on one side of her neck and collarbone. Her left arm was also red. For a few days afterward, she told family members that her throat hurt, that it was difficult to swallow or eat, and her voice was raspy. She also complained of a headache, and soreness and numbness on one side of her body. At trial, Wilhelme denied that she had any problems with her throat for more than a day and generally denied experiencing any other physical ailments after the incident.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the trial court erred by failing to direct a verdict on the first-degree home invasion charge. He contends that the evidence did not support the charge because there was insufficient evidence that he did not have permission to enter Wilhelme's home. We disagree.

This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Hammons,* 210 Mich App 554, 556; 534 NW2d 183 (1995). We must determine whether the evidence, viewed in a light most favorable to the prosecution, was sufficient to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). "Any conflict in the evidence must be resolved in the prosecutor's favor." *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

In *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010), our Supreme Court identified the elements of first-degree home invasion as follows:

> The alternative elements of first-degree home invasion can be broken down as follows:
>
> Element One:  The defendant *either*:
>
> > 1. breaks and enters a dwelling or

-2-

2. enters a dwelling without permission.

Element Two: The defendant *either*:

1. intends when entering to commit a felony, larceny, or assault in the dwelling or

2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.

Element Three: While the defendant is entering, present in, or exiting the dwelling, *either*:

1. the defendant is armed with a dangerous weapon or

2. another person is lawfully present in the dwelling.

Defendant challenges only the first element, arguing that the evidence was insufficient to show that he did not have permission to enter Wilhelme's home.

At trial, Wilhelme testified that, before the assault, she and defendant had discussed defendant's desire to come over to her house to talk about their relationship. But according to Wilhelme, when she spoke to defendant on the telephone after she returned home, she explained that she was going to bed and did not want to discuss their relationship at that time. Although defendant is correct that Wilhelme admitted at trial that after she ended her conversation with defendant she "kinda" expected him to show up at her home, she did not testify that she had invited defendant there or given him permission to enter her home. To the contrary, she made it clear in her testimony that she did not invite defendant over to the house, and she did not expect him to be inside her home when she discovered him peeking through the fish tank. Moreover, the testimony established that defendant did not have free access to the house, and none of the other occupants had allowed defendant to enter.

The circumstantial evidence also supported a reasonable inference that defendant entered the home without permission. First, there were footsteps found leading from the complex's clubhouse to a rarely used back entrance to the mobile home. Moreover, when Wilhelme discovered defendant, he was crouched down behind a fish tank outside her bedroom door around 3:00 a.m. Defendant's attempt to conceal himself behind a fish tank outside Wilhelme's bedroom allowed the jury to infer that defendant knew that he was not supposed to be inside Wilhelme's home.

Defendant argues that when denying his motion for a directed verdict, the trial court inaccurately stated that Wilhelme "unequivocally instructed the defendant that he was not to come over to the house, that she was done talking about it." Although defendant takes exception to the trial court's use of the word "unequivocally," the court's word choice is immaterial because our review is de novo. As indicated, Wilhelme testified at trial that she told defendant that she was going to bed and did not want to further discuss their relationship that night, and she

made it clear that she did not invite defendant to her home. In fact, she testified that she told defendant multiple times to leave. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant entered Wilhelme's home without permission. Accordingly, the trial court did not err by denying defendant's motion for a directed verdict.

## III. TELEPHONE RECORDINGS

Defendant next argues that a new trial is required because the prosecutor improperly played several recorded telephone conversations between defendant and Wilhelme at trial. Defendant argues that it was improper to play those recordings for the jury because they were offered only for the purpose of refreshing Wilhelme's memory regarding her conversations with defendant. Defendant concedes that there was no objection to the introduction of the recordings at trial, leaving this issue unpreserved. We review unpreserved issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355-356; 662 NW2d 376 (2003).

At trial, Wilhelme admitted receiving about 144 telephone calls from defendant after he was arrested, between April 11 and June 8 of 2017. When Wilhelme testified that she could not remember some of her conversations with defendant, the prosecutor played recorded portions of some of the calls to refresh her memory. After playing the calls, Wilhelme admitted to having the conversations with defendant.

The prosecutor offered the recordings under MRE 612, which permits a party to use a "writing or object to refresh memory," but that rule does not permit the jury to consider the content of the material used to refresh a witness's memory as substantive evidence. *People v Favors*, 121 Mich App 98, 109; 328 NW2d 585 (1982). Further, defendant is correct that it is procedurally improper to publish the substance of the material used to refresh a witness's memory to the jury. *Id.* at 107-109. However, the witness's refreshed recollection is admissible as substantive evidence. *Id.* at 109.

In this case, the recordings were offered for the purpose of refreshing Wilhelme's recollection of her conversations with defendant. Defendant's statements during those conversations were themselves admissible under MRE 801(d)(2)(A), as admissions by a party-opponent. As to Wilhelme's statements during the phone calls, she confirmed their accuracy at trial, and therefore, they could be considered as substantive evidence. Thus, any procedural error involving the manner in which the recordings were used to refresh Wilhelme's memory did not affect defendant's substantial rights. Therefore, defendant cannot show prejudice, i.e., that the outcome of the proceedings would have been different absent the error. Accordingly, defendant is not entitled to relief with respect to this unpreserved issue.

## IV. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor engaged in misconduct during her questioning of Wilhelme by referring to her prior conversations with Wilhelme. According to defendant, the

prosecutor's references to those conversations were the functional equivalent of improper testimony and constituted improper vouching for the factual statements mentioned in the questions. Again, defendant concedes that this issue is unpreserved because there was no objection to the prosecutor's questions at trial. Therefore, review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764; *People v Abraham,* 256 Mich App 265, 274-275; 662 NW2d 836 (2003).

The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). Claims of prosecutorial misconduct are decided case by case and the challenged conduct must be viewed in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). Prosecutorial misconduct may not be predicated on good-faith efforts to admit evidence. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007); *People v Noble,* 238 Mich App 647, 660; 608 NW2d 123 (1999). The prosecutor is entitled to attempt to introduce evidence that she legitimately believes will be accepted by the trial court, so long as it does not prejudice the defendant. *Id.* at 660-661. It is improper for a prosecutor to express her personal belief regarding evidence or a witness's credibility, or to suggest that she has some special knowledge about a witness's truthfulness. *People v Meissner,* 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas,* 260 Mich App 450, 455; 678 NW2d 631 (2004).

Defendant argues that the prosecutor effectively testified as a witness when she referred to her prior conversations with Wilhelme when questioning Wilhelme about telephone calls between herself and defendant and why she felt threatened by him. We disagree with defendant's argument that the prosecutor's questions were the functional equivalent of testimony. The prosecutor's questions were leading, but that was not improper because Wilhelme could be characterized as a hostile witness, given that at the time of trial she appeared to align herself with defendant. MRE 611(d)(3). The use of leading questions is also permitted to develop a witness's testimony. MRE 611(d)(1). Although defendant argues that the prosecutor's questions allowed her to vouch for her own version of events, the trial court instructed the jury on what constitutes evidence and specifically stated that "[t]he lawyers' questions to the witnesses . . . are . . . not evidence" and the questions could be considered "only as they give meaning to the witnesses [sic] answers." The court's instructions were sufficient to protect defendant's substantial rights.

In sum, defendant has not established plain error because the prosecutor was not prohibited from asking leading questions. In addition, the trial court protected defendant's substantial rights by instructing the jury that the attorneys' questions are not evidence. Accordingly, defendant is not entitled to relief with respect to this unpreserved issue.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant raises several claims of ineffective assistance of counsel. Because defendant did not raise these claims in a motion for a new trial or request for an evidentiary hearing in the trial court, our review of this issue is limited to errors apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was

denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show that there was a reasonable probability that, but for his counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

Defendant first argues that counsel was ineffective for failing to object when the prosecutor played the recorded telephone conversations between defendant and Wilhelme for the purpose of refreshing Wilhelme's memory. As discussed earlier, although it was procedurally improper for the prosecutor to play the recordings before the jury, Wilhelme confirmed the accuracy of the conversations, her testimony related to those conversations could be considered as substantive evidence, and defendant's statements were themselves admissible as substantive evidence under MRE 801(d)(2). Under these circumstances, defendant was not prejudiced by defense counsel's failure to object.

Defendant next argues that defense counsel was ineffective for failing to object to the prosecutor's references to her prior conversations with Wilhelme when questioning Wilhelme at trial. As explained previously, the prosecutor was not prohibited from asking leading questions. Therefore, it was reasonable that defense counsel would not object to the questioning. Further, even without an objection by counsel, the trial court's instructions made it clear to the jury that the prosecutor's questions were not themselves evidence. Accordingly, there is no reasonable probability that the outcome of defendant's trial would have been different had counsel objected.

Next, defendant argues that defense counsel was ineffective for failing to raise a hearsay objection to the testimony of Gregory, Papuga, and Windy regarding Wilhelme's statements shortly after the 911 call on the night of the incident. The record does not support this claim. On the contrary, the record reveals that defense counsel raised a hearsay objection when Gregory testified regarding Wilhelme's statements after the 911 call. The trial court overruled the objection, finding that, because Wilhelme was still under the stress or excitement of the event, her statements were admissible under the excited utterance exception to the hearsay rule, MRE 803(2). Although counsel did not object when Windy and Papuga testified regarding Wilhelme's statements, because the testimony involved the same statements that Gregory had heard and the trial court had already ruled that the statements were admissible as excited utterances, it was not objectively unreasonable for counsel to not object again when Windy and Papuga testified. Given the trial court's prior ruling, any objection would have been futile. Counsel is not ineffective for failing to make a futile objection. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

We also reject defendant's argument that counsel was ineffective for failing to object to testimony from Gregory, Papuga, and Windy that, a couple of days after the incident, Wilhelme still had a raspy voice and complained about having a sore throat, difficulty eating and swallowing, having a headache, and suffering from soreness and numbness on the left side of her body. Wilhelme's statements describing her physical ailments were admissible under MRE 803(3), the hearsay exception for "a statement of the declarant's then existing . . . sensation, or physical condition (such as . . . mental feeling, pain, and bodily health), . . . ." Therefore, any objection by defense counsel would have been futile. *Darden*, 230 Mich App at 605.

Next, defendant argues that defense counsel was ineffective for failing to object to the scope of the testimony offered by the prosecution's expert witness, Diane Zalecki Bertalan, who was qualified as an expert in the field of forensic nursing, with a focus on strangulation. Defendant argues that the following testimony exceeded the scope of Bertalan's expertise:

> *Q*. As far as — counsel was asking you questions about the fact that when [Wilhelme] was interviewed by the police she said she couldn't breathe and then at the exam she said she could lightly breathe.
>
> *A*. Correct.
>
> *Q*. And you talked about well, that was later —
>
> *A*. Right.
>
> *Q*. — because he said is that significant to you and you said well, that was later, why is it because it's later significant to you?
>
> *A*. Well, it's important because that's part of the cycle of domestic violence. You know, initially, there is the fear, which usually, you know, call 911, I need help, followed by anger, followed by an understanding that, wait a minute, this is gonna really impact my life, and so individuals start to weigh what are some of the consequences, and it could be, you know, money, it could be child care that this person provides, it could be a lot of different things that this person provides to their life. It could be just the stability of the family. And so it is not unusual at all that we find victims of domestic violence backtracking a little bit because of the fact that they start to realize just what the impact will mean.

Bertalan was qualified as an expert in forensic nursing to address strangulation, and she was also the program director of the forensic nursing program at HAVEN, an agency that serves victims of domestic violence, where she had worked for almost 11 years. Bertalan testified that in her role as a forensic nurse, "we are concerned with the medical needs of a patient, and we also have specialized training in forensics, so we gather evidence and make observations, along those lines." Bertalan's qualification as a forensic nurse with a focus on strangulation was intertwined with her background and experience in treating victims of domestic violence. We are not persuaded that the challenged testimony was clearly outside the scope of her expertise.

Moreover, defense counsel had earlier questioned Bertalan about what conclusions could be drawn from Wilhelme's testimony at the preliminary examination that she could only "breathe lightly," as opposed to being unable to breathe. By asking Bertalan about Wilhelme's apparent change in her account of the incident, defense counsel opened the door to Bertalan's testimony about the cycle of domestic violence to explain why Wilhelme might have changed her account. Counsel reasonably may have refrained from objecting for this reason. Moreover, after Bertalan offered the challenged testimony, defense counsel, on recross-examination, elicited Bertalan's admission that her testimony applied to domestic violence cases in general, and she did not base her testimony on any information available to her in this case. The record does not support defendant's claim that defense counsel's performance with regard to Bertalan's testimony was objectively unreasonable.

-7-

Defendant also asks this Court to remand this case for an evidentiary hearing on his ineffective assistance claims. We are satisfied, however, that the record is sufficient to address and decide his claims. Further, defendant has not provided any affidavits or other offers of proof to explain how he would further develop the record on remand. Therefore, we deny defendant's request for a remand. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995).

## VI. OTHER-ACTS EVIDENCE

Next, defendant argues that the trial court erred by allowing the prosecutor to present evidence of prior incidents of domestic violence between defendant and Wilhelme. We review the trial court's decision to admit evidence for an abuse of discretion, but any preliminary questions of law are reviewed de novo. *People v Washington,* 468 Mich 667, 670-671; 664 NW2d 203 (2003).

The prosecution presented evidence that on April 3, 2016, Wilhelme contacted the police when defendant confronted her as she sat in her vehicle, after she had been at a boyfriend's home the night before. On April 5, 2016, defendant followed Wilhelme home after he texted her about why she was not at work (indicating that he was following her), and he then cut her vehicle off in an attempt to stop her. On March 17, 2017, Wilhelme saw defendant at a bar and then discovered the next morning that someone had slashed the headboard in her bedroom and stolen some of her personal items. Defendant later admitted to taking the items. According to Wilhelme, defendant also later threatened to slash Wilhelme's boyfriend as he had the headboard. On March 31, 2017, just a few days before the charged incident, defendant confronted Wilhelme outside her home after he told her he was at work. When she refused to talk to him, he attempted to open her car door. He held onto the door when she tried to drive off and, when she threatened to call the police, he told her that she would be dead before the police arrived.

The trial court granted the prosecutor's motion to admit this evidence under MCL 768.27b, as other acts of domestic violence. Unlike MRE 404(b), which prohibits evidence of a defendant's other crimes, wrongs, or acts to show the defendant's propensity to commit a crime, in cases involving domestic violence, MCL 768.27b permits evidence of prior acts of domestic violence to show a defendant's character or propensity for committing the same offense. *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). However, such evidence is still subject to exclusion under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Id*. at 220. To determine if evidence should be excluded under MRE 403, a trial court should balance several factors, including

> the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).]

"Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Id.*

Under MCL 768.27b, evidence may be admissible against a defendant who has committed past acts of domestic violence against a "family or household member." See MCL 768.27b(5). In this case, Wilhelme and defendant qualify as "family" under MCL 768.27b due to their past dating relationship, the fact that they had lived together, and the fact that they share a child. MCL 768.27b(5)(b)(*ii*), (*iii*), and (*iv*). The evidence was not inadmissible simply because the prior incidents did not involve actual physical acts of violence. Under MCL 768.27b(5)(a), domestic violence includes mental harm, attempts to cause physical harm, and conduct that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed. The prior incidents in this case included direct physical confrontations, threats of physical violence and death, and conduct that would cause a reasonable person to feel frightened or terrorized.

Moreover, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The alleged motive for the charged offense was defendant's anger that Wilhelme was unwilling to continue a romantic relationship with defendant. The prior incidents similarly involved defendant's efforts to re-establish such a relationship with Wilhelme, and showed how he would become angry or jealous when she refused to do so or when she pursued a romantic relationship with someone else. The evidence showed a pattern of escalating intimidating and harassing conduct by defendant against Wilhelme. All of the prior incidents admitted at trial occurred within a year of the charged offenses. Even though the prior acts did not involve actual acts of physical violence, the evidence was relevant to show defendant's propensity to react violently against Wilhelme when she refused his requests to get back together. The evidence supported the credibility of her testimony in this case. See *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). Further, the evidence of the prior headboard incident was relevant to show that defendant was able to access Wilhelme's home. The trial court also instructed the jury on the limited permissible purpose of the evidence, thereby alleviating any risk of unfair prejudice. Accordingly, the trial court did not abuse its discretion by admitting this evidence at trial.

VII. REQUEST FOR COUNSEL

Defendant argues that the trial court erred by denying his midtrial request to adjourn the trial to afford him an opportunity to consult with another attorney to assist him in deciding whether to testify. We disagree. This Court generally reviews a trial court's decision regarding a defendant's request for new counsel, or right to counsel of choice, for an abuse of discretion. *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991); *People v Akins*, 259 Mich App 545, 556; 675 NW2d 863 (2003).

After the prosecution presented its case, but before the defense rested, defense counsel questioned defendant on the record regarding his decision whether to testify. Defendant acknowledged that he had discussed the matter with counsel throughout trial, and that he understood that he had a constitutional right not to testify. When asked whether he wished to testify, defendant said that he had not made a decision yet, and he asked for an opportunity to speak with another attorney because he felt "like I could use some more consultation" on that

issue. Defendant explained that he did not fully understand how testifying might impact the case, given what he believed were "wishy washy" statements, different witness accounts, and other issues that came up during trial.

The trial court denied defendant's request to adjourn trial so that he could consult with another attorney because of the late timing of his request, defendant had not complained of any disagreement with appointed counsel's representation, and defendant had been afforded plenty of time to discuss the issue with counsel and make a decision as to whether he would testify. The trial court also observed that new counsel would need to become familiar with the case and the issues to properly advise defendant, otherwise it could lead to a claim of ineffective assistance of counsel. The court denied the motion on the grounds that it was "waived, unduly delayed, negligent and without good cause or prejudice to the defendant."

Initially, we note that it is unclear whether defendant was requesting the appointment of new counsel to advise him whether to testify, or was requesting an opportunity to retain counsel of his own choice for this purpose. Either way, defendant has not demonstrated that the trial court abused its discretion by denying defendant's request.

In cases where a defendant is represented by appointed counsel, the defendant must meet certain standards before new counsel may be appointed. This Court has explained:

> "An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced." *Traylor*, 245 Mich App at 462 (quotation marks and citation omitted). Substitution of counsel "is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id.* (quotation marks and citation omitted). Good cause may exist when "a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic," when there is a "destruction of communication and a breakdown in the attorney-client relationship," or when counsel shows a lack of diligence or interest. *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973). "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011) (citation omitted). [*People v McFall*, 309 Mich App 377, 382-383; 873 NW2d 112 (2015).]

In this case, the trial court did not err by finding that defendant had delayed raising this issue. Before jury selection began, defense counsel stated on the record that defendant was "still mulling over his decision of whether or not to testify, when that moment comes, but we'll address that at that time." Defendant did not request an opportunity to consult with another attorney until after the prosecution had presented its case and rested, and it was time for him to decide whether to testify. Although defendant argues that the court could have easily adjourned trial for one afternoon to accommodate his request, as the trial court observed, in order to properly advise defendant, another attorney would necessarily have to become familiar with the case and the issues therein. Also, any new attorney would not have had the benefit of having

heard the prosecution's witnesses. Therefore, substantial time would have been required for a new attorney to become familiar with the facts and evidence in the case. Otherwise, as the trial court noted, allowing defendant to confer with an attorney who was not fully versed in the facts and issues could lead to a claim of ineffective assistance of counsel. Under these circumstances, granting defendant's midtrial request to adjourn trial would have unreasonably disrupted the judicial process.

Furthermore, the trial court did not abuse its discretion by finding that defendant had failed to show good cause to warrant the appointment of another attorney. Defendant did not express any dissatisfaction with appointed counsel's representation, but rather was simply undecided about whether to testify. Moreover, defendant had ample time to make that decision. Defense counsel's statements on the record before jury selection indicated that they had discussed the matter before trial, defendant was still contemplating what to do, and defendant had two full days during trial to make a decision.

To the extent that defendant's request can be viewed as a request for an opportunity to retain counsel of his own choice for the purpose of advising him whether to testify, defendant has also failed to demonstrate that the court abused its discretion by denying his request. In *Akins*, 259 Mich App at 557, this Court stated:

> "The Sixth Amendment guarantees an accused the right to retain counsel of choice." *Id*. at 80. "However, the right to counsel of choice is not absolute." *Id*. at 84. " 'A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated.' " *Id*., quoting *People v Krysztopaniec*, 170 Mich App 588, 598; 429 NW2d 828 (1988).

> > When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).]

Again, considering that defendant did not identify a bona fide dispute with his appointed attorney, that he failed to raise the issue until midtrial after the prosecution had rested, and that an opportunity to consult with new counsel would have substantially disrupted the trial, the trial court did not abuse its discretion by denying defendant's request. Further, defendant has not shown prejudice, given that he does not claim that appointed counsel failed to adequately or properly advise him with regard to his decision whether to testify.

## VIII.  SENTENCING GUIDELINES

Defendant argues that the trial court erred in scoring offense variables (OVs) 13 and 19 of the sentencing guidelines.  Because consecutive sentencing was authorized, the trial court scored the guidelines for defendant's convictions of both first-degree home invasion and assault by strangulation.  For each conviction, the court assessed 25 points for OV 13, and 10 points for OV 19.  Defendant challenges each of these assessments.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

The scoring of OV 13 is governed by MCL 777.43, which provides, in relevant part:

> (1) Offense variable 13 is continuing pattern of criminal behavior.  Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> * * *
>
> (c) The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person . . . . . . . . . . . . . . . . . . . . . . 25 points
>
> * * *
>
> (2) All of the following apply to scoring offense variable 13:
>
> (a) For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.

Under MCL 777.43(1)(d), only 10 points should be assessed if the offense "was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property . . . ."

In scoring OV 13, the trial court considered the two sentencing offenses, both of which are classified as crimes against a person.  MCL 777.16d; MCL 777.16f.  The trial court also found that the evidence supported a finding that defendant committed an additional home invasion approximately three weeks before the charged offenses.  According to testimony at trial, Wilhelme and defendant saw each other at a bar on St. Patrick's Day in 2017.  When Wilhelme returned home the next day, she discovered that someone had entered her bedroom, slashed the headboard on her bed, and had taken some of her personal belongings.  Defendant later admitted that he took the items.  He also later threatened to slash her boyfriend as he had her headboard.  This evidence supports the trial court's finding that defendant was responsible for the break-in on St. Patrick's Day, and that he committed either a second- or third-degree home invasion, MCL 750.110a(3) and (4)(a), each of which is classified as a felony against a person.  MCL 777.16f.

Although defendant claimed that he had permission to enter Wilhelme's home that night, Wilhelme and her mother both claimed otherwise and the circumstances also supported a finding that defendant was inside the home without permission. A preponderance of the evidence supports the trial court's finding that defendant committed a home invasion in relation to the St. Patrick's Day incident. Further, it was not necessary that defendant be convicted of home invasion in relation to that incident for the court to use that conduct when scoring OV 13. *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007). Accordingly, the trial court did not err in assessing 25 points to OV 13.

MCL 777.49 provides that "[o]ffense variable 19 is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." The court is directed to score 10 points for OV 19 where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). An offender who does not so interfere should receive zero points. MCL 777.49(d).

The evidence at trial supported the trial court's assessing 10 points for OV 19. At trial, the prosecutor introduced recorded telephone conversations between defendant and Wilhelme, during which defendant attempted to influence Wilhelme's testimony or dissuade her from cooperating with the prosecution. There was also evidence that defendant asked his mother to provide him with a false alibi after he discovered that she had not yet spoken to the police. Such conduct interferes with the administration of justice. See *People v Hershey*, 303 Mich App 330, 342-345; 844 NW2d 127 (2013); *People v Ericksen*, 288 Mich App 192, 203-204; 793 NW2d 120 (2010). Accordingly, the trial court did not err in scoring OV 19.

## IX. REASONABLENESS OF DEFENDANT'S SENTENCES

Defendant argues that the trial court imposed an unreasonable sentence for his assault by strangulation conviction when it exceeded the guidelines minimum sentence range of 29 to 57 months' imprisonment and sentenced him to a prison term of 6 to 10 years for that conviction. He also argues that the trial court erred by ordering that his sentences for assault by strangulation and first-degree home invasion be served consecutively. We disagree.

A trial court's departure sentence is reviewed for reasonableness by determining whether the trial court abused its discretion by violating the principle of proportionality, "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). A trial court's decision whether to impose a discretionary consecutive sentence is also reviewed for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016).

In *People v Dixon-Bey*, 321 Mich App 490, 520-521; 909 NW2d 458 (2017), this Court explained:

> "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of

discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). In *Steanhouse*, the Michigan Supreme Court clarified that "the relevant question for appellate courts reviewing a sentence for reasonableness" is "whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Id*. The principle of proportionality is one in which

> "a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender." [*Id*. at 472, quoting *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990).]

Under this principle, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661. Part of the *Steanhouse* Court's reasoning for adopting the "principle-of-proportionality test" for reviewing a sentence for reasonableness was "its history in our jurisprudence." *Steanhouse*, 500 Mich at 471. Accordingly, although the *Lockridge* Court corrected a constitutional flaw in the sentencing guidelines by making them fully advisory,

> nothing else in [that] opinion indicated we were jettisoning any of our previous sentencing jurisprudence outside the Sixth Amendment context. Moreover, none of the constitutional principles announced in [*United States*] *v Booker* [543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005)] or its progeny compels us to depart from our longstanding practices applicable to sentencing. Since we need not reconstruct the house, we reaffirm the proportionality principle adopted in *Milbourn* and reaffirmed in [*People v Babcock*, 469 Mich 247; 666 NW2d 231 (2003)] and [*People v Smith*, 482 Mich 292; 754 NW2d 284 (2008)]. [*Steanhouse*, 500 Mich at 473.].

We are not persuaded that defendant's sentence for the assault by strangulation conviction, a 15-month departure from the minimum sentence guidelines range, is unreasonable. The court found that the instant offenses were a continuation of similar offenses committed by defendant as both an adult and a juvenile, and that defendant had not benefitted from past efforts at rehabilitation. Defendant had a juvenile record for second-degree home invasion and malicious destruction of a building less than $200. He also had prior adult convictions for aggravated assault, assault and battery, and harassment. Although the sentencing guidelines reflected that defendant had a criminal history, they did not take into account the assaultive nature of defendant's prior convictions, or the fact that the instant convictions demonstrated a continuing pattern of assaultive conduct towards Wilhelme which was escalating in severity. The court properly recognized that defendant had not benefited from prior attempts to address his

assaultive conduct and that his assaultive behavior was becoming more serious. Further, evidence at trial revealed a history of prior acts of domestic violence by defendant against Wilhelme that did not result in criminal charges. Defendant's conduct during this case, notably his attempts to get his mother and Wilhelme to lie for him, also reflected negatively on his prospects for rehabilitation. Considering these factors in conjunction with the seriousness of the offense and defendant's criminal history, it was not unreasonable for the trial court to exceed the guidelines by 15 months for the assault by strangulation conviction.

Defendant also argues that the trial court abused its discretion by imposing consecutive sentences. MCL 750.110a(8) provides that "[t]he court may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." The trial court recognized that it had discretion to impose consecutive sentences and invited the parties' input on this matter. Ultimately, the court decided that consecutive sentences were appropriate in light of defendant's history of similar offenses and the severity of the instant assault. Given defendant's history of assaultive conduct, including his history of domestic violence against Wilhelme, he has not shown that the trial court abused its discretion by imposing consecutive sentences.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron

-15-